IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

WALLACE WILLINGHAM,         )
                                         )
      Petitioner,               )         CASE NO.  1:10-0042
                                         )         CHIEF JUDGE HAYNES
v.                                    )
                                         )
TONY PARKER, Warden,       )
                                       )
      Respondent.             )

## MEMORANDUM

Petitioner, Wallace Willingham, filed this pro se action under 28 U.S.C. § 2254 seeking the writ of habeas corpus to set aside his state conviction for drug possession for which Petitioner received a 30 year sentence as a career offender. After a review of the petition, the Court appointed the Federal Public Defender to represent Petitioner. In his amended petition, Petitioner asserts the following claims: (1) ineffective assistance of trial and appellate counsel; (2) the State's withholding of material and exculpatory evidence; (3) the denial of due process of law due to police corruption in violation of the Fifth, Sixth and Fourteenth Amendments; and (4) a grossly disproportionate sentence that violates the Eighth Amendment.

In his answer, Respondent asserts that Petitioner's claims of ineffective assistance of appellate counsel, his Brady[1] and due process claims were not fairly presented to the state courts, are time barred under Tenn. Code Ann. § 40-30-102(a) and are procedurally defaulted. As to Petitioner's exhausted claims, Respondent argues that the state trial courts' decisions on those claims were reasonable applications of clearly established federal law.

---

[1]Brady v. Maryland, 373 U.S. 83 (1963).

1

## A. Review of the State Record

### 1. Procedural History

A jury convicted Petitioner of possession of more than .5 grams of cocaine with intent to sell, and the state trial court sentenced Petitioner to 30 years in prison as a career offender. On direct appeal, Petitioner's sole claim was the insufficiency of the evidence given the disparity in the weight of the drugs in the police and the Tennessee Bureau of Investigation ("TBI") reports. The Tennessee Court of Criminal Appeals affirmed Petitioner's conviction and sentence. State v. Willingham, No. M2005-00717-CCA-R3-CD, 2006 WL 3093204 (Tenn. Crim. App. Nov. 1, 2006). The Tennessee Supreme Court denied his application for permission to appeal. Id.

On April 2, 2007, Petitioner filed his state post-conviction petition with claims of ineffective assistance of counsel. After an evidentiary hearing, the trial court denied the petition and on appeal, Petitioner presented the following claims: (1) ineffective assistance of counsel; (2) the State suppression of evidence favorable to him; and (3) the use of convictions to enhance his sentence that were void. Willingam v. State No. M2008-01240-CCA-R3-PC, 2009 WL 2633024 (Tenn. Ct. Crim. App. Aug. 25, 2009). The Tennessee Court of Criminal Appeals affirmed the state trial court's order denying relief. Id. The Tennessee Supreme Court denied Petitioner's application for permission to appeal.

### 2. State Court Findings of Fact

In Petitioner's direct appeal, the Tennessee Court of Criminal Appeals found the following facts[2] underlying Petitioner's conviction:

---

[2] State appellate court opinion findings can constitute factual findings in a habeas action. Sumner v. Mata, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness 28 U.S.C. § 2254(e).

Case 1:10-cv-00042    Document 48    Filed 05/29/13    Page 2 of 16 PageID #: 946

On May 10, 2001, Pulaski Police Department and Giles County Sheriff's Department officers executed a search warrant at the [petitioner's] residence. . . . Once the law enforcement officers were inside, the [petitioner] asked Investigator L.C. Gill to accompany him to the kitchen where the [petitioner] pulled a bag of what appeared to be crack cocaine out of his sock and another bag from his pocket. . . . In searching a bedroom closet, Investigator Gill found another bag of what appeared to be cocaine hidden in a man's shoe. . . . Among other things, the officers also uncovered $940.00 in cash, digital scales with cocaine residue, marijuana, a crack pipe and cleaners, and an address book. . . .Two forensic scientists with the Tennessee Bureau of Investigations (TBI) subsequently tested the substance that appeared to be cocaine and confirmed that it was cocaine, weighing a combined total of more than 17 grams.

Willingham, 2006 WL 3093204, at *1. The State appellate courts' other factual findings are set forth in the context of Petitioner's claims.

## B. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." The

3

Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Id. at 412.

In Greene v. Fisher, 132 S.Ct. 38, 2011 WL 5335411, at *2 (2011), the Supreme Court considered whether "'clearly established Federal law' includes decisions of this Court that are announced after the last adjudications of the merits in state court but before the defendant's conviction becomes final" and answered the question in the affirmative. There, a Supreme Court decision at issue was rendered two months after the state supreme court upheld the petitioner's convictions. The Supreme Court held that its decision was not clearly established at the time of the state supreme court's decision. Id. at *3-5. The Supreme Court noted a different result if the Petitioner had applied for the writ of certiorari or had filed a state post-conviction petition. Id. at *5.

In Bell v. Cone, 535 U.S. 685, 693 (2002), the Supreme Court reiterated that the AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law." Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is

4

unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court:

> In this and related contexts we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) 124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); Miller-El v. Cockrell, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

## 1. Ineffective Assistance of Counsel Claims

In his post-conviction appeal, Petitioner's claims about his counsel were as follows:

> As grounds for ineffectiveness, the Petitioner contended that trial counsel failed to investigate and challenge the circumstances surrounding the search of the residence and, thus, waived the issue on appellate review. The Petitioner further complained that the lead detective, Lt. Gill, was tied to allegations of corruption. The amended petition only expounded upon the assertion that he was illegally sentenced as a career offender.

Willingam, 2009 WL 2633024, at *1.

5

For these claims, the Tennessee appellate court found the following facts:

Trial counsel testified that he represented the Petitioner at trial and at the sentencing hearing. Trial counsel could not remember all the details surrounding his representation of the Petitioner, and no longer had his file in his possession. Subsequent to his representation of the Petitioner, trial counsel abandoned his law practice, and he was disbarred. He relocated to Las Vegas, taking his legal files with him. However, these files were later seized by authorities following trial counsel's arrest.

Trial counsel did recall plea negotiations. According to trial counsel, the original plea offer was "harsh," but he believed it was so because of the Petitioner's criminal record. At some point, the State offered a nine-year plea agreement, which the Petitioner rejected. He was "adamant about not taking the plea." Trial counsel testified that, relying upon his customary practices, he discussed all plea offers with the Petitioner. Even after the State filed a notice seeking enhanced punishment as a career offender, the Petitioner was still not amenable to the plea offer and chose to proceed to trial.

Trial counsel remembered three meetings with the Petitioner prior to trial while he was in custody at the Giles County Jail. Trial counsel could not recall if he ever filed a motion to suppress the drugs found in the residence. He did remember receiving discovery from the State and reviewing those documents with the Petitioner. Also, he discussed the facts and circumstances of the case with the Petitioner. According to trial counsel, the main issue at trial was the discrepancy in the weight of the drugs when weighed at the Pulaski Police Department and then later by the TBI, apparently due to the fact that the police department weighed the packaging while the TBI did not. Trial counsel also recalled "having many discussions about the trial, before and after, based on what went on in the trial[.]" Moreover, trial counsel did not personally know of any wrongdoing by Lt. Gill, what he knew was only "hearsay and rumor."

Trial counsel recalled the Petitioner's prior history of convictions. He also remembered that, after examining some of those convictions, he did not seek to challenge any of them. When asked whether he talked about sentencing ranges with the Petitioner, he stated that, while he could not recall the Petitioner's case specifically, it was his custom and habit at the time to inform the client, at the "first initial contact," of his possible sentencing exposure, including his range classification. "[I]n every case[,]" trial counsel informed clients of plea offers and range enhancement notices.

When questioned about the motion for new trial filed in the Petitioner's case, trial counsel admitted that the motion wrongly challenged the sufficiency of the evidence for the Petitioner's second degree murder conviction, when the Petitioner was

6

convicted of possession of cocaine for resale. Trial counsel explained that he used a form to prepare the motion. Moreover, the Petitioner was found guilty on June 6, 2003, but the motion for new trial was not filed until September 5, 2003; thus, the motion was untimely. Trial counsel was positive he spoke with the Petitioner about appealing his case, stating that he spoke with the Petitioner after trial and that the Petitioner wanted to appeal. He could not recall if he discussed appealing the Petitioner's sentence with him but stated it was his custom and habit to do so. When confronted about his errors in the filing of the motion for new trial, trial counsel agreed that "maybe [his] habit and practice didn't always govern in this case[.]" We note that the sufficiency of the evidence supporting the Petitioner's drug conviction was reviewed on appeal by this Court, and the evidence was deemed sufficient. . . .

The Petitioner testified that he retained trial counsel approximately three months before trial. He relayed that they first met in the Giles County Jail and went over some paperwork. According to the Petitioner, they did not discuss his sentencing exposure as a career offender at that time. Trial counsel did review the evidence with the Petitioner and met with him a "couple of times[.]" According to the Petitioner, trial counsel opined that "the evidence was all screwed up, was all messed up." Additionally, trial counsel never provided any information to the Petitioner about how police initially entered the home, and no motion to suppress was ever filed.

The Petitioner claimed that the public defender, who initially represented the Petitioner, had received a six-year offer from the State, but a few months later, "they had took the deal away[.]" The Petitioner testified that, by the time trial counsel became involved in his case, the offer by the State was twenty years at 60%. Trial counsel wanted to get an offer carrying a sentence of eight to twelve years, a Range I sentence. The Petitioner stated that trial counsel never conveyed a nine-year plea offer to him. The Petitioner testified that, although he was aware of his range classification before trial, he was not aware of his career offender status during plea negotiations. The Petitioner testified that, if he had been aware of his sentencing exposure and the nine-year offer, he would have accepted the plea offer.

The Petitioner did not recall any meetings with trial counsel between trial and his sentencing hearing; trial counsel never reviewed the Petitioner's prior convictions with him. The Petitioner recalled receiving the motion for new trial; however, he also wanted to challenge his prior convictions, which trial counsel did not do. According to the Petitioner, he did not ask trial counsel to appeal his case, but trial counsel stated that he was going to do so anyway because trial counsel believed the Petitioner received an illegal sentence. The Petitioner also claimed that, thereafter, he sent five or six letters to trial counsel but that trial counsel never responded to him. The Petitioner last spoke with trial counsel at the sentencing hearing.

After hearing the evidence presented, the post-conviction court denied relief. The

After hearing the evidence presented, the post-conviction court denied relief. The post-conviction court ruled that the Petitioner had not satisfied his burden of proving that trial counsel was ineffective, noting the two offers (six and nine years) communicated to the Petitioner, which the Petitioner turned down, and noting that both the Petitioner and trial counsel testified that they discussed the Petitioner's prior record supporting his range classification as a career offender. The post-conviction judge also recalled the "long list of convictions" recited at the sentencing hearing and acknowledged by the Petitioner. It was also noted that defense strategy was to attack the credibility of the police officers that entered the house and, additionally, that another attorney was able to perfect the Petitioner's appeal despite an untimely motion for new trial. An order was entered to this effect on May 27, 2008. This appeal followed.

Willingham, 2009 WL 2633024, at *2-3.

In this action, Petitioner argues that the following portions of the State Court decisions are an unreasonable application of Strickland v. Washington, 466 U.S. 668, 695 (1984):

- "Moreover, the evidence does not preponderate against the post-conviction court's findings [that trial counsel conveyed the nine-year offer to Petitioner]." (D.E. 18-10 at 6.)

- "The Petitioner did not present any grounds to support possible suppression of the evidence or corruptive police practices." (D.E. 18-10 at 6.

- "Trial counsel's later abandonment of his practice and disbarment do not effect the determination that the Petitioner received effective representation at the time of his trial and sentencing." (D.E. 18-10 at 6.)

- "[T]here is no reasonable probability that any failure to convey the State's offer affected the outcome of the plea process." (D.E. 18-10 at 6.)

- "The Petitioner has not shown that trial counsel failed to prepare for trial and investigate his case, failed to communicate the nine-year offer from the State, or failed to advise him about his sentencing range. . . In consequence, the Petitioner has failed to establish that he was denied the effective assistance of counsel at trial or sentencing." (D.E. 18-10 at 7.)

(Docket Entry No. 47 at 8).

To establish ineffective assistance of counsel, Petitioner must demonstrate that under the

8

totality of the circumstances, his trial counsel performed deficiently and that counsel's performance

resulted in prejudice. Strickland, 466 U.S. at 695. As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains

simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel

has a duty to make reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary." Id. at 691. As to the duty to investigate:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be

9

challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decision, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id at 690-91.

In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691. Counsel's failure "to conduct constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices." Harries v. Bell, 417 F.3d 631, 639 (6th Cir. 2005). A court must examine not only to the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, 215 F.3d 1325, 2000WL712376, at *3 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams v. Taylor, 529 U.S. 362 390-91(2000). In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

As to the nine (9) year plea offer, "[t]he Petitioner testified that, although he was aware of

10

his range classification before trial, he was not aware of his career offender status during plea negotiations. The Petitioner testified that, if he had been aware of his sentencing exposure and the nine-year offer, he would have accepted the plea offer." Willingham, 2009 WL 2633024, at *3. The state courts found that "the State offered a nine year plea agreement, which Petitioner rejected." Id. at *2. As to Petitioner's awareness of his exposure to a career offender sentence, the state trial court and the Tennessee appellate court credited counsel's testimony: "When asked whether he talked about sentencing ranges with the Petitioner, he stated that, while he could not recall the Petitioner's case specifically, it was his custom and habit at the time to inform the client, at the "first initial contact," of his possible sentencing exposure, including his range classification. "[I]n every case[,]" trial counsel informed clients of plea offers and range enhancement notices." Id. at *2. On the State's twenty year plea offer, the state courts' found that Petitioner testified that, by the time the offer by the State was twenty years at 60%.

The undisputed facts are that Petitioner possessed at least .5 grams of drugs as charged, and his convictions qualify him as a career offender. The state courts credited Petitioner's counsel's testimony that he discussed the sentence enhancement range with Petitioner. With these findings, the Tennessee court could reasonably find that a nine (9) year plea offer was discussed. Credibility issues decided by state court are entitled to the presumption of correctness. Skaggs, 235 F.3d at 266. There are references to rumors about a police officer involved in Petitioner's case and Petitioner's trial counsel's drug use and subsequent disbarment, but there is not any showing that these facts would have caused a different outcome. Given these facts and Petitioner's awareness of his criminal history, the Court concludes the state courts' application of Strickland under these circumstances is not unreasonable.

11

## 2. Procedural Default

As to Petitioner's remaining claims, Respondent asserts the procedural default defense to Petitioner's claims about his appellate counsel and his <u>Brady</u> and due process violations, "Procedural Default Doctrine" is an extension of the comity policy that underscores the exhaustion doctrine and bars consideration of a federal claim in a habeas action absent a showing of cause and prejudice or actual innocence. As defined by the Supreme Court, under this doctrine:

> [t]his Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. **This rule applies whether the state law ground is substantive or procedural.** In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. **Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory. . .**
>
> \*    \*    \*
>
> **. . . the doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.** In these cases, the state judgment rests on an independent and adequate state procedural ground.

Coleman v. Thompson, 501 U.S.722, 729-30 (1992) (emphasis added and citations omitted).

The rationale for this doctrine arises out of federal respect for federalism and maintaining comity with state courts:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without a rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

12

\* \* \*

> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. . . .In the absence of an independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the State's interest in correcting their own mistakes is respected in all federal habeas cases.

Id. at 730-32.

The Supreme Court further recognized that state procedural rules also serve a legitimate state interest in finality of criminal convictions:

> [p]lainly the interest in finality is the same with regard to both federal and state prisoners. . . . There is no reason to . . . give greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations.

Francis v. Henderson, 425 U.S. 536, 542(1976) (quoting Kaufman v. United States, 394 U.S. 217, 228 (1969)).

In Murray v. Carrier, 477 U.S. 478 (1986), the Supreme Court noted that state procedural rules channel the controversy to the state trial and appellate courts.

> [A] state's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack . . . Each state's compliment of procedural rules . . . channel[s] to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently. Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and undercut[s] the state's ability to enforce its procedural rule[s].

Id. at 490-91 (quoting Engle v. Isaac, 456 U.S. 107, 129 (1982)).

The procedural default doctrine applies only to firmly established and "regularly followed" state procedural rules. Johnson v. Mississippi, 486 U.S. 578, 587 (1988). Moreover, if the state

13

court did not determine whether a petitioner's claims were procedurally defaulted under state law, then the District Court is to consider whether the state court would bar the claims, if those claims were presented to the state courts. Engle, 456 U.S. at 125-26, n.26. If the state decision is unclear, then the same rule obtains and the Court examines the briefs of the parties in the state courts. Bagby v. Sowders, 853 F.2d 1340, 1348 (6th Cir. 1988).

Once procedural default on a state rule is established, the federal petitioner must establish cause and prejudice to excuse such non-compliance. Carrier, 477 U.S. at 488. The procedural default doctrine also does not preclude federal habeas review if the petitioner has an error-free trial, but makes a showing of actual innocence of the offense with clear and convincing evidence that reveals a fundamental miscarriage of justice. Sawyer v. Whitley, 505 U.S. 333, 336 (1992).

In the Sixth Circuit, the analysis under the procedural default doctrine was set forth by the Court of Appeals in the oft-cited Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986):

> When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis. First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> *    *    *
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction.
>
> *    *    *
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.

14

Id. at 138 (citations omitted).

With the one year statute of limitations for the Tennessee Post Conviction Act, Tenn. Code Ann. § 40-30-102 (a), this doctrine would bar these claims in the state court. See Wright v. Bell, 619 F.3d 586. 603-04 (6th Cir. 2010). The waiver statute, Tenn. Code Ann. § 40-30-112(a) has been held to represent legitimate state interests that is regularly enforced for the procedural default analysis. See Cone v. Bell, 243 F.3d 961, 969 (6th Cir. 2001) overruled on other grounds, Bell v. Cone, 535 U.S. 685 (2002). Thus, the Court concludes that these claims are procedurally defaulted.

### 3. The Cause and Prejudice Requirement

The "cause" for a procedural default must be external to the petitioner and must otherwise be attributable to the state.

> . . . **we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.** Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, see Reed v. Ross, 468 U.S., at 16, or that 'some interference by officials,' Brown v. Allen, 344 U.S. 443, 486 (1953), made compliance impracticable, would constitute cause under this standard.

Carrier, 477 U.S. at 488 (emphasis added).

Petitioner's claim about appellant counsel cannot establish cause as the function of appellate counsel is the strategic decision on what issue to raise on appeal by "winnowing" out claims for the appeal. Smith v. Murray, 477 U.S. 527, 536 (1986). For a Brady claim to establish cause, those allegations must be material and there is not any showing here that the rumors about the police officer affected Petitioner's trial. The undisputed fact is that Petitioner was in possession of more

15

than .5 grams of drugs and had a significant and qualifying criminal history. In addition, a career offender sentence does not violate the Eighth Amendment. <u>Ewing v. California</u>, 538 U. S. 11, 25 (2010).; <u>Solem v. Helm</u>, 463 U.S. 277, 290 n.16 (1983); <u>United States v. Thorton</u>, 609 F.3d 373, 378-79 (6th Cir. 2010). For these reasons, there is not any showing of cause or prejudice to excuse these procedural defaults.

For these reasons, the Court concludes that the petition should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _28th_ day of May, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

16